**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

CFO LEVERAGE, LLC,

      Plaintiff,

v.                                                                    Case No. 2:26-cv-02167-MSN-tmp

TIMOTHY G. FENNEMA and
JOHN & JANE DOES 1–5,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER, DIRECTING SERVICE ON DEFENDANTS, AND SETTING
EXPEDITED BRIEFING SCHEDULE AND HEARING**

---

Before the Court is Plaintiff CFO Leverage, LLC's ("Plaintiff") Motion for Temporary Restraining Order ("TRO"), filed February 20, 2026. ("Motion," ECF No. 10.) For the reasons below, to the extent the Motion requests a TRO, Plaintiff's request is **GRANTED**.[1]

## BACKGROUND

On February 20, 2026, Plaintiff filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages. (ECF No. 1.) On the same day, Plaintiff also filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery. (ECF No. 10.) Plaintiff CFO Leverage, LLC is a financial consulting and operations services firm that uses the Bill.com platform to "process vendor payments on behalf of its clients." (ECF No. 1 at

---

[1] This Court has jurisdiction pursuant to the Computer Fraud and Abuse Act, which provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator." 18 U.S.C. § 1030(g). In the alternative, the Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000. (ECF No. 1 at PageID 1–3.)

PageID 4.)   Plaintiff hired Defendant Timothy G. Fennema on December 15, 2025, as an independent contractor to provide bookkeeping and financial operations services to Plaintiff's nonprofit clients.   (*Id.* at PageID 4.)   Pursuant to his duties under a Contractor Agreement ("Agreement"), Defendant utilized a Plaintiff-provided Bill.com account to "manage payment processing tasks" for Plaintiff's clients.   (*Id.* at PageID 5.)   Within a day of being hired, Defendant "commenced a fraudulent scheme to direct vendor payments from . . . clients to unauthorized bank accounts."   (*Id.* at PageID 6.)   In total, Fennema completed five unauthorized transactions, depositing a total of $87,197.42 across four bank accounts (with account numbers ending in 7477, 2670, 9605, and 2423).   (*Id.* at PageID 6–9.)   After investigating and determining the cause of the lost vendor payments, Plaintiff "paid or is paying the funds to replace the affected payments."   (*Id.* at PageID 10.)   Plaintiff terminated its working relationship with the Defendant on February 3, 2026, "for reasons unrelated to his fraudulent scheme."   (*Id.* at PageID 9.)

## **STANDARD OF REVIEW**

"[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits . . . ."   *Stein v. Thomas*, 672 F. App'x 565, 572 (6th Cir. 2016) (McKeague, J., dissenting) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).   In determining whether to grant a request for a TRO or a preliminary injunction, courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."   *S. Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quotations omitted); *see also Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (explaining that the same factors

apply to TROs and preliminary injunctions).  "[D]istrict courts weigh the strength of the four

factors against one another," but "cannot eliminate the irreparable harm requirement." *D.T. v.

Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (citation omitted). Further, "a finding

that there is simply no likelihood of success on the merits is usually fatal." Stryker Emp. Co., LLC

v. Abbas, 60 F.4th 372, 385 (6th Cir. 2023) (quoting *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th

Cir. 2015)).

## DISCUSSION

The Court finds that the TRO factors weigh in favor of granting Plaintiff's Motion, that

Plaintiff has met the procedural requirements of Fed. R. Civ. P. 65, and that a bond is not presently

required.

### A.    TRO FACTORS

#### 1.    Likelihood of Success on the Merits

When the conduct to be prohibited or required would be the same regardless of which

claims plaintiffs prevail upon, they "need only show the likelihood of success of *one* of their

claims." *Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 694 (S.D.

Ohio 2024) (citation omitted).  "'[A] plaintiff must show more than a mere possibility of success,'

but need not 'prove his case in full.'" *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591

(6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511

F.3d 535, 543 (6th Cir. 2007). Generally, a plaintiff has carried the burden of showing a likelihood

of success upon "rais[ing] questions going to the merits so serious, substantial, difficult, and

doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."

*Just City, Inc. v. Bonner*, 758 F. Supp. 3d 785, 797 (W.D. Tenn. 2024) (quoting *Husted*, 696 F.3d

at 591 (6th Cir. 2012)).

Plaintiff first argues that it will succeed on its fraud (or "intentional misrepresentation") claim. (ECF No. 11 at PageID 49.) Under Tennessee law, a plaintiff pursuing such an intentional misrepresentation claim must prove:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). In the present case, Fennema is alleged to have intentionally altered the bank account information for Plaintiff's clients, thereby knowingly making false, material misrepresentations in his usage of the Plaintiff-provided Bill.com account. (ECF No. 1 at PageID 5–10.) Further, Plaintiff asserts that the "fraudulent scheme . . . was not known to CFO Leverage at the time." (*Id.* at PageID 9; ECF No. 11 at PageID 50.) Plaintiff was also justified in relying on the truth of Defendant's representations because the Agreement and Plaintiff-provided access to Bill.com was explicitly predicated upon the honest performance of Defendant's duties. (ECF No. 1 at PageID 4–5.) Finally, Plaintiff has incurred damages as a result of having to pay vendors as compensation for the fraudulently taken funds. (ECF No. 1 at PageID 10.)

Plaintiff is therefore likely to succeed on the merits of its fraud claim, and the Court accordingly declines to consider the status of their other claims. *See Greene Cnty.*, 717 F. Supp. 3d at 694.

## 2. Likelihood of Irreparable Injury Absent the Requested Relief

The Court also finds that Plaintiff has set forth facts demonstrating a likelihood of irreparable injury absent a TRO. While injunctive relief is often not appropriate where the object

of litigation is monetary recovery, "[t]he concealment and dissipation of assets likely obtained through fraud constitutes irreparable harm." *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) (citation omitted). Here, though Plaintiff does seek monetary recovery, there is a lack of certainty regarding the whereabouts of any ill-gotten gains, as well as uncertainty regarding who is actually in possession of the funds. They may be spent, transferred out of sight and reach, or otherwise dissipated. (*See* ECF No. 11 at PageID 53 ("Does 1-5 remain concealed behind account numbers ending in 7477, 2670, 9605, and 2423, and every day that passes without restraint is a day in which these unknown co-conspirators may further dissipate, transfer, or secret away the misappropriated funds beyond Plaintiff's reach.").) Accordingly, the Court finds the issuance of TRO necessary to prevent irreparable injury to the Plaintiff.

### 3. Substantial Harm to Others

This Order maintains the status quo by ordering Defendant to maintain funds, devices, and records necessary to resolve the present litigation. The Court further orders Defendant to provide information readily available to him. It thus imposes a minimal burden on Defendant in order to avoid a much larger burden on Plaintiff—the inability to locate and recover funds. Accordingly, the Court concludes that this factor counsels in favor of the relief Plaintiff requests.

### 4. Whether a TRO Will Benefit the Public Interest

The public interest is firmly in the prevention of fraud, particularly in the context of commercial relationships requiring honesty, trust, and commitment to contractual obligations. This factor weighs in support of the TRO.

In light of these factors, the Court thus finds that a TRO is appropriate given the circumstances of this case.

**B.    ADDITIONAL REQUIREMENTS UNDER FED. R. CIV. P. 65**

**1.    Notice**

Federal Rule of Civil Procedure 65(b) governs a court's issuance of a TRO when notice has not been provided to the adverse party or their attorney.[2]  That Rule provides that a TRO may be issued in such circumstances "only if" the following two conditions are met: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).  Here, however, the Certificate of Service submitted with the Motion indicates that Defendant was served "via email and FedEx" on February 20, 2026.  Accordingly, the Court considers the Defendant to have sufficient notice of the present TRO request.  Even if Defendant did not have such notice, though, Plaintiff has shown sufficient irreparable loss and efforts to give notice that the requirement may be excused.

**2.    Bond**

Pursuant to Federal Rule of Procedure 65, a movant requesting a preliminary injunction must "give[] security in an amount the court considers proper to pay the costs and damages of any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Though Rule 65 phrases this as a requirement, "the rule in our circuit has long been that [a] district court possesses discretion over whether to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)).  At present, the Court

---

[2] Summons has been issued as to Defendant Fennema, (ECF No. 9), but it has not been returned executed.

will not require the posting of a bond but intends to revisit the issue at the upcoming hearing on March 2, 2026.

## C.    EXPEDITED DISCOVERY

The Court will *not* grant Plaintiff's request for expedited discovery for now, but also intends to take this issue up at the upcoming hearing on March 2, 2026.

### <u>CONCLUSION</u>

Plaintiff's request for a Temporary Restraining Order is **GRANTED**.  It is **ORDERED** as follows:

1. Defendants Timothy G. Fennema and John & Jane Does 1–5, and anyone acting in concert with them, are immediately **RESTRAINED** and **ENJOINED** from transferring, dissipating, encumbering, concealing, or disposing of any funds received from the fraudulent diversion of payments from Plaintiff's clients.

2. Defendants, and anyone acting in concert with them, are immediately **RESTRAINED** and **ENJOINED** from destroying, altering, concealing, or disposing of any documents or electronic records relating to the fraudulent scheme alleged in the Verified Complaint.

3. Defendant Fennema shall, within fifteen (15) days of entry of this Order, identify and disclose all bank accounts in his name or in which he has an interest and to identify all accounts, platforms, programs, networks, and other means Fennema used to conduct business from December 15, 2025, to the present.

4. Within thirty (30) days of entry of this Order, Defendant Fennema shall submit any electronic devices used to conduct business for CFO Leverage, LLC from December 15, 2025, to the present to a neutral third-party forensic examiner, at Plaintiff's expense, for the purpose of imaging such devices and preserving evidence.

5. Defendants shall provide a full accounting of all funds diverted through the fraudulent scheme alleged in the Verified Complaint.

6. The bond requirement under Federal Rule of Civil Procedure 65(c) is hereby waived until March 2, 2026.

7. A hearing on Plaintiff's Motion for Preliminary Injunction is hereby set for Monday, March 2, 2026, at 3:00 p.m. in Courtroom 4 of the Odell Horton Federal Building in Memphis, Tennessee.

8. Plaintiff shall serve a copy of this Order on all known Defendants within two business days of its entry via overnight delivery.

9. This Temporary Restraining Order shall remain in effect until March 2, 2026, unless extended by the Court for good cause shown or until the preliminary injunction hearing, whichever occurs first.

**IT IS FURTHER ORDERED** that Defendants file a response to Plaintiff's Motion by Friday, February 27, 2026.

**IT IS SO ORDERED**, this 20th day of February, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE